**TOVEA A. TAELEIFI GALEA'I TUPA'I, Claimant**

**v.**

**SUAFALA TAVAI, FAOATO FUA TUPUA,**
**and ATOA S. SIPILI, Counter-Claimants**

**[In re Registration of the Matai Title**
**"ATIUMALETAVAI" of the Village of Pago Pago]**

High Court of American Samoa
Land and Titles Division

MT No. 9-91

September 10, 1992

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate
Judge, MATA'UTIA, Associate Judge, LOGOAI, Associate Judge, and
BETHAM, Associate Judge.

Counsel:      For Claimant, Afoa L.S. Lutu
                 For Counter-Claimant Suafala, Tauese P.F. Sunia
                 For Counter-Claimant Faoato, Gata E. Gurr
                 For Counter-Claimant Atoa, Aitofele T. Sunia

Order Denying Motions for Reconsideration or New Trial:

The trial in this case was held on May 12-14, 1992, and resulted in the award of the matai title "Atiumaletavai" to claimant Tovea A. Taeleifi Galea'i Tupa'i (Tovea). The Court's opinion and decision was issued and filed on May 28, 1992. Each of the counter-claimants, Suafala Tavai (Suafala), Faoato Fua Tupua (Faoato) and Atoa S. Sipili (Atoa) have filed motions for reconsideration or new trial, respectively on June 1, 1992, June 8, 1992, and June 5, 1992. The motions were heard on June 30, 1992.

The motions have taken issue with the Court's decision and opinion with respect to each of the four criteria which the Legislature has prescribed and mandated for the Court's guidance in A.S.C.A. § 1.0409. These criteria require consideration of the claimant's and counter-claimants' (1) hereditary right to the matai title; (2) support among the customary clans of the family as entities; (3) forcefulness, character and personality, and knowledge of Samoan customs; and (4) value as the titleholder to the family, village and country. In addition, Suafala has faulted the lack of extensive, comparative discussion of the title candidates' qualifications in the Court's opinion and decision, while Atoa has cited undue rapidity by Tovea in filing to register the title with the Territorial Registrar without allowing the family sufficient time to reach a consensus, and Faoato has questioned the legitimacy of Suafala's residency for purposes of holding a matai title. We will discuss all of these matters as may be necessary or appropriate to clarify or expand upon the Court's opinion and decision.

1. *Comparative discussion of qualifications.*

In taking up this issue, Suafala appears to be looking at the frequent but not universal approach in this Court's matai-title decisions to include substantial comparative discussions of the title candidates' qualifications under each of the four statutory criteria which must be considered. While this method can provide useful analysis to the reader of matai-title judicial decisions and was assiduously followed during the three days of deliberations undertaken by the judges in this case, the only legal requirement is a written decision containing findings of fact and conclusions of law on each of the four statutory criteria. A.S.C.A. § 1.0409(c); *see also* T.C.R.C.P. 52(a). The Court's opinion and decision in this action complied with this requirement.

2. *The offer of the title for registration.*

Atiumaletavai Kaleopa died in January 1991. Two family meetings about his successor did not result in a selection. In April 1991, following the second meeting, Tovea offered to register the title in her name with the Territorial Registrar, which triggered the statutory notice, objection and dispute-resolution procedures. In September 1991, after three hearings did not succeed in reaching an agreement on the successor titleholder, the Deputy Secretary of Samoan Affairs issued a certificate of irreconcilable dispute. Citing *In re Matai Title "Le'iato"*, 2 A.S.R.2d 94 (1986), Atoa has criticized Tovea's offer to register the title as an action taken without affording adequate time to allow the family to reach a consensus in due course on the successor and requiring her disqualification.

We concur with the Court's comments in *Le'iato* that too many *matai* titles are awarded by judicial process rather than by the family in accordance with traditional custom, and that the Legislature should consider legislation aimed at curbing the abuse of the traditional, matai-title selection process that can result from premature offers of registration, which force other candidates to object to protect their interests. However, contrary to Atoa's position on this issue, *Le'iato* does not stand for the proposition that a title candidate who acts within his or her legal rights but at the same time abuses the traditional selection process is disqualified. This is the very reason legislation to protect the custom would be beneficial. Moreover, in this case, the judges carefully weighed the evidence on the circumstances surrounding Tovea's offer to register the title for any adverse impact on her qualifications and found that there was ample opportunity for and manifested unlikelihood of a family consensus on the selection.

### 3. *The residency qualification.*

Suafala lived and was employed outside of American Samoa for many years. He is now retired. His wife is non-Samoan, and he still owns a home in Hawaii, where his wife was living at the time of the trial. However, as Atiumaletavai Kaleopa's health was seriously deteriorating, he returned to American Samoa for the express purpose of establishing the residency required under A.S.C.A.§ 1.0404(a) as a prerequisite to holding a matai title. His return was more than one year before he objected to Tovea's claim to the title, and except for occasional visits with his family in Hawaii, he has remained here.

American Samoa follows the traditional rule of determining domicile or permanent residency by the union of physical presence at a

96

particular place and intent to indefinitely fix habitation there, frequently denoted as the place to which, when a person is absent, he or she intends to return. *See* A.S.C.A. § 6.0212 (election-code provisions). The Court deliberated on the evidence on this point as well and was, and still is, satisfied that Suafala is a bona fide resident for the purpose of qualification to hold this matai title.

### 4. *The best hereditary right.*

Efforts to state a universal rule as the standard used to evaluate the best hereditary-right issue have defied practical formulation. *In re Matai Title "Sotoa"*, 2 A.S.R.2d 15 (1984), sought this objective by rejecting the notion that every titleholder established a new line of heredity in favor of the conceptually logical and fair concept that blood lines should be traced from the original titleholder. The *Sotoa* rule soon ran into practical difficulties in application, usually when there have been divergent views on the identity of the original titleholder or successors to that title. Examples are *In re Matai Title "Le'iato"*, 2 A.S.R.2d at 94-95; *In re Matai Title "La'apui"*, 4 A.S.R.2d 7, 7-8 (1987); and *In re Matai Title "Fano"*, 4 A.S.R.2d 148, 148-49 (1987). At the opposite end of the spectrum is the realistic view that recognizes that any rule of general principle may not only be impractical but also not in accord with a particular family's traditions, and thus, that any given case may require a distinctly different approach. *See In re Matai Title "Fano"*, 4 A.S.R. 2d at 149; *In re Matai Title "Tauaifaiva"*, 5 A.S.R.2d 13, 15 (1987).

In this case, Suafala has advocated use of the pre-*Sotoa* rule favoring the candidate with the highest percentage of blood relation to any previous titleholder. As the only candidate who is the offspring of a titleholder, the application of this rule gives him an advantage on this issue. The other three candidates have generally urged reference to a common ancestor, on whose identity the four candidates agree, who although not a holder of the title was a direct descendant of the original titleholder through several generations. Each of the four candidates is a fifth generation descendant of this common ancestor. Thus, the result is equality of hereditary right among them. Whether or not this reference to a common ancestor is a true family tradition, it is in fact only a variation and practical application of the *Sotoa* rule, which the Court is following in this case. Hence, none of the candidates prevails on this issue.

On this issue, Atoa also asserted that Tovea must be excluded from the equality of hereditary right found by the Court, based on the

97

language of A.S.C.A. § 1.0409(c)(1) stating, in essence, that a male descendant prevails over a female descendant unless family custom treats both genders equally in matai-title matters. However, again the Court has considered the evidence on this point and has found, and continues to find, that females are not excluded from holding the title within the traditions of this family.

### 5. *The wish of a majority or plurality of the clans.*

The troublesome area of this criterion has been a lack of a clear definition to enable identification of the clans of a family. It has been said that clans are established by the children of the original titleholder who marry and have offspring, a logical corollary of the *Sotoa* rule on hereditary rights. *In re Matai Title "Sotoa"*, 2 A.S.R.2d at 15-16. However, again there is the view that clans are best determined by the traditions of the family in each case. *In re Matai Title "Tauaifaiva"*, 5 A.S.R.2d at 15.

The evidence in this case shows that the original titleholder had only one child, who in turn had four children. Each of these four children had children, but only one of the four children had descendants who are traced by the evidence beyond themselves to modern times. The evidence also shows that there are three distinct families which result from the common ancestor, who has been identified for hereditary-right purposes, and which are clearly active in present-day family affairs and are recognized as Atiumaletavai clans for decision-making purposes. Thus, the Court has accepted these three families as the customary clans for purposes of this case.

The Court's reference in the opinion and decision to the number of Tovea's individual supporters among at least two of these three clans is not properly interpreted as establishing a majority or plurality of the clan support, as the present motions suggest, but only as indicative of her support in those two clans as distinguished to the support in those clans for the other candidates. As *In re Matai Title "Fano"*, 4 A.S.R.2d at 150, indicates, the numbers are properly considered, but only as one factor evidencing clan support.

Further review of the evidence on this issue has convinced the Court that there has been significant support among the members of one or more of the three present-day clans for each of the candidates, but there is no satisfactory evidence of genuine or full support by at least two of these clans for any of the candidates, and certainly none by the family,

considered as a single clan descended from their common progenitor as the son of the original titleholder.

Application of the standard on this criterion also produces no clearly prevailing candidate having a majority or plurality of clan support, and the finding of fact on this issue in the Court's opinion and decision is so modified.

### 6. *The third and fourth criteria.*

The standards applicable to the third criteria on forcefulness, character and personality, and knowledge of Samoan customs, and to the fourth criteria on value to family, community and country are adequately stated by their statutory descriptions. The present motions do not establish any convincing basis for different findings of fact on either of these issues.

### 7. *Conclusion.*

Since Tovea clearly remains the superior candidate on the last two criteria and the findings of fact on the first two criteria as modified will not change this result, the motions for reconsideration, except for the change in the finding of fact on the clan-support criterion, or new trial are denied.

It is so ordered.